FILED
2008 Nov-04 PM 01:58
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **CATHOLIC MEDICAL MISSION BOARD**, derivatively on behalf of **REGIONS FINANCIAL CORPORATION**, | } } } } } | |
| Plaintiff, | } } | |
| v. | } } | Case No.: 2:08-cv-00485-RDP |
| **C. DOWD RITTER, et al.,** | } } | |
| Defendants, | } } | |
| -and- | } } | |
| **REGIONS FINANCIAL CORPORATION,** | } } } | |
| Nominal Defendant. | } } } | |
| ———————————————— | } } | ———————————————— |
| **WILLIAM TIRELLI STEPHENS**, derivatively on behalf of **REGIONS FINANCIAL CORPORATION,** | } } } } } | |
| Plaintiff, | } } | |
| v. | } } | Case No.: 2:08-cv-00550-RDP |
| **C. DOWD RITTER, et al.,** | } } | |
| Defendants, | } } | |
| -and- | } } | |
| **REGIONS FINANCIAL CORPORATION** | } } } | |
| Nominal Defendant. | } } | |

**MEMORANDUM OPINION**

Before the court are Motions to Dismiss filed by Defendants in these consolidated actions. (08cv485 - Docs. #34 and 35; 08cv550 - Docs. #30 and 31). For the reasons discussed below, the motions are due to be granted.

**I.     Factual Background**

Plaintiffs Catholic Medical Mission Board ("CMMB") and William Tirelli Stephens ("Stephens"), who each claim to be shareholders of Regions Financial Corporation ("Regions"), filed separate putative shareholder derivative complaints purporting to act for the benefit of Regions, a Delaware corporation. Together the complaints allege violations of state and federal law, including breaches of fiduciary duty, waste of corporate assets, unjust enrichment, and violations of the Securities and Exchange Act of 1934 against forty-five current and former directors and officers of Regions. Plaintiffs' Complaints each admit that demand was not made on Regions' Board of Directors to pursue these claims because, they claim, such a demand would have been futile. (08cv485 - Doc. #1 at ¶¶ 109-23; 08cv550 - Doc. #1 at ¶¶ 86-101).

**II.    Standard Of Review**

Defendants moved to dismiss the Complaints pursuant to Rules 9, 12, and 23 of the Federal Rules of Civil Procedure. "A complaint should be dismissed under Rule 12(b)(6) only where it appears beyond doubt that no set of facts could support the plaintiff's claims for relief." *In re Coca-Cola Enterprises, Inc. Derivative Litigation*, 478 F.Supp.2d 1369, 1373 (N.D. Ga. 2007)

(*citing* Fed.R.Civ.P. 12(b)(6)). In deciding a Rule 12(b)(6) motion, the court must "accept all well-pleaded factual allegations in the complaint as true and construe the facts in a light most favorable to the non-moving party." *Dacosta v. Nwachukwa*, 304 F.3d 1045, 1047 (11th Cir. 2002) (*citing GJR Invs., Inc. v. County of Escambia, Fla.*, 132 F.3d 1359, 1367 (11th Cir. 1998)). "Under notice pleading, the plaintiff need only give the defendant fair notice of the plaintiff's claim and the grounds upon which it rests." *In re Coca-Cola*, 478 F.Supp.2d at 1373 (*citing Lombard's, Inc. v. Prince Mfg., Inc.*, 753 F.2d 974, 975 (11th Cir. 1985), *cert. denied*, 474 U.S. 1082 (1986)). "However, in a shareholder derivative case, '[t]he complaint shall also allege *with particularity* the efforts, if any, made by the plaintiff to obtain the action the plaintiff desires from the directors or comparable authority and, if necessary, from the shareholders or members, *and the reasons for the plaintiff's failure to obtain the action or for not making the effort*.'" *In re Coca-Cola*, 478 F.Supp.2d at 1373-74 (*quoting* Fed.R.Civ.P. 23.1) (emphasis added).

### III.   Legal Framework

The substantive law of Delaware applies to Plaintiffs' shareholder derivative actions against Defendants. *Staehr v. Alm*, 269 Fed.Appx. 888, 891 (11th Cir. 2008). In a derivative suit, the cause of action belongs to the corporation. Owing to the unique nature of a derivative suit, a derivative plaintiff must show that he has satisfied specific prerequisites to filing suit:

> "A cardinal precept of the General Corporation Law of the State of Delaware is that directors, rather than shareholders, manage the business and affairs of the corporation." *Aronson v. Lewis*, 473 A.2d 805, 811 (Del. 1984); *accord Spiegel v. Buntrock*, 571 A.2d 767, 772-73 (Del. 1990); *see* 8 Del.C. § 141(a) (1992). Shareholder derivative suits restrict a board of directors' managerial authority. Therefore, as a prerequisite to a shareholder derivative suit, Delaware law requires an aggrieved shareholder to demand that the board take the desired action. *Spiegel*, 571 A.2d at 773. The board's rejection of the shareholder's demand will not be disturbed unless it is wrongful. *See id.* at 775 (*citing Stotland v. GAF Corp.*, 469

>A.2d 421, 422 (Del. 1983), and *Zapata Corp. v. Maldonado*, 430 A.2d 779, 784-86 (Del. 1981)). Alternatively, a shareholder may plead that demand is excused because futile. *See Levine v. Smith*, 591 A.2d 194, 200 (Del. 1991). The demand requirement "insure[s] that a stockholder exhausts his intracorporate remedies, and ... provide[s] a safeguard against strike suits." *Aronson*, 473 A.2d at 811-12. Pre-suit demand affords the board an opportunity to address the shareholder's concerns without litigation and to decide what corporate action, if any, is in the best interests of the corporation and all of its shareholders. *See Spiegel*, 571 A.2d at 773 (Del. 1989).

*Stepak v. Addison*, 20 F.3d 398, 402 (11th Cir. 1994).

Federal Rule of Civil Procedure 23.1(b) requires that Plaintiffs plead the facts that excuse making demand upon the board with particularity:

>**(b) Pleading Requirements.** The complaint must be verified and must:
>
>...
>
>(3) state with particularity:
>
>(A) any effort by the plaintiff to obtain the desired action from the directors or comparable authority and, if necessary, from the shareholders or members; and
>
>(B) the reasons for not obtaining the action or not making the effort.

Fed. R. Civ. P. 23.1(b)(3). Whether Plaintiffs have satisfied their burden of pleading with specificity the reasons excusing them from making a demand upon the board is the key question here. Accordingly, the court will analyze whether Plaintiffs' allegations satisfy the Rule 23.1(b) requirements.

This past summer, the Supreme Court of Delaware reiterated the "controlling legal standard for determining the sufficiency of a complaint to withstand dismissal based upon a claim of demand futility ... ." *Wood v. Baum*, 953 A.2d 136, 140 (Del. 2008):[1]

> Two tests are available to determine whether demand is futile. The *Aronson* test applies to claims involving a contested transaction *i.e.*, where it is alleged that the directors made a conscious business decision in breach of their fiduciary duties. That test requires that the plaintiff allege particularized facts creating a reason to doubt that "(1) the directors are disinterested and independent [or that] (2) the challenged transaction was otherwise the product of a valid exercise of business judgment." ... The second (*Rales*) test applies where the subject of a derivative suit is not a business decision of the Board but rather a violation of the Board's oversight duties. The *Rales* test requires that the plaintiff allege particularized facts establishing a reason to doubt that "the board of directors could have properly exercised its independent and disinterested business judgment in responding to a demand."

*Wood*, 953 A.2d at 140 (*quoting Aronson v. Lewis*, 473 A.2d 805, 814 (Del. 1984); *Rales v. Blasband*, 634 A.2d 927, 934 (Del. 1993)). "To satisfy either test, a plaintiff must 'comply with stringent requirements of factual particularity ... .'" *Wood*, 953 A.2d at 140 (*quoting Brehm v. Eisner*, 746 A.2d 244, 254 (Del. 2000)). The proper time to measure demand futility is at the filing of the suit. *In re Coca-Cola*, 478 F.Supp.2d at 1375 (*citing Aronson* 473 A.2d at 810).

At the time the Complaints were filed in these actions, Regions' Board of Directors (the "Current Board") had seventeen members: Defendants Ritter, Bryan, Wilson, Bartholomew, Perez, Roberts, Matlock, Witt, Styslinger, Cooper, Deavenport, DeFosset, Ingram, Malone, McCrary, Nielsen, and Maupin. (08cv485 - Doc. #1 at ¶ 112; 08cv550 - Doc. #1 at ¶ 90). "In order to survive [Defendants'] motion[s] to dismiss, Plaintiffs must demonstrate that a majority of these directors were either interested or lacked independence." *In re Coca-Cola*, 478 F.Supp.2d at 1375. Plaintiffs

---

[1] "Delaware Chancery Rule 23.1 and Federal Rule of Civil Procedure 23.1 contain similar requirements." *Staehr*, 269 Fed.Appx. at 890 n.4.

make certain arguments directed at the board (regardless of its membership at the time) as a whole, and offer other arguments directed only at certain members. (08cv485 - Doc. #39; 08cv550 - Doc. #35).

## IV.    The Challenged Transactions

Plaintiffs' claims in this case can be categorized into four types: (1) claims arising before November 2006; (2) claims relating to press releases after November 2006; (3) Regions' sale of its EquiFirst sub-prime lending subsidiary in January 2007 along with the sale of alleged sub-prime laden investment securities; and (4) Regions' 2007 Stock Repurchase Program. Plaintiffs allege that they were excused from making demand on Regions' Board to bring these claims because it would have been futile, citing different reasons for that futility related to the various types of claims. (08cv485 - Doc. #39; 08cv550 - Doc. #35).

### A.    Pre-November 2006 Actions

Of the seventeen-member Current Board, nine, a majority, were not members prior to November 6, 2006: Ritter, Cooper, Deavenport, DeFosset, Ingram, Malone, McCrary, Nielsen, and Maupin. (08cv485 - Doc. #36 at Exs.4 and 5; 08cv550 - Doc. #32 at Exs. 4 and 5). As such, they face no liability for any of the claims alleged to have arisen prior to November 2006. Plaintiffs argue that the other eight, who were members of the board prior to November 2006 (the "Old Board"), face potential liability for pre-November 2006 decisions and, thus, are interested. Based on that assertion, they claim it would have been futile to make a demand upon them. Plaintiffs further argue that Ritter, who was not part of the Old Board, is nonetheless not independent because he is allegedly dominated by and dependent on the Old Board. Either way, whether demand should have been made

as to pre-November 2006 claims appears to turn on whether Ritter could be considered independent at the time demand should have been made.

With respect to the pre-November 2006 claims, Plaintiffs have only made one allegation with particularity: Ritter is beholden to or controlled by the Compensation Committee because his primary occupation is his employment at Regions and that committee determines his compensation. Plaintiffs' argument centers on three of the six Compensation Committee members who are from the Old Board and allegedly face potential liability for their own pre-November 2006 actions. The three Old Board members of the Compensation Committee at the time the suit was filed were Bryan, Matlock and Styslinger. The other members of the Compensation Committee at the time suit was filed were Deavenport, Ingram, and Nielsen. Plaintiffs' argument ignores the fact that the three members they claim are interested do not constitute a majority of the Compensation Committee. Plaintiffs make no allegations, particular or otherwise, that the three other members of the Compensation Committee (Deavenport, Ingram, and Nielsen) are interested for purposes of pre-November 2006 transactions.

A review of the particularized allegations about the three Old Board Compensation Committee members reveals that Plaintiffs have alleged no facts with particularity with regard to any wrongdoing by Matlock. The only particularized fact alleged regarding Matlock is that she served on the Compensation Committee. Under well established Delaware law, mere membership on a board committee is insufficient to establish a substantial likelihood that the member will face individual liability. *Wood*, 953 A.2d at 142 (*citing Rattner v. Bidzos*, 2003 WL 22284323, at *12-13 (Del. Ch. Ct. 2003)).

Plaintiffs have failed to plead facts with particularity establishing that a majority of the Compensation Committee at the time this suit was filed was interested or lacked independence. As such, even if it could be said that Ritter was beholden to or controlled by that Committee, that assertion does not affect his independence. Therefore, as to pre-November 2006 claims, Plaintiffs have failed to allege particularized facts which would show that a majority of the Current Board was interested, and, thus, they have failed to carry their burden of establishing demand futility. Defendants' Motions to Dismiss are due to be granted as to Pre-November 2006 claims.

B.   **Post-November 2006 Press Releases**

Because the claims relating to the post-November 2006 press releases do not relate to a transaction or particular business decision of the Board, to excuse their failure to present a demand, Plaintiffs must allege particularized facts establishing a reason to doubt that "the board of directors could have properly exercised its independent and disinterested business judgment in responding to a demand." *Wood*, 953 A.2d at 140 (*citing Rales*, 634 A.2d at 934). Plaintiffs argue that nine members of the Current Board, DeFosset, McCrary, Roberts, Styslinger, Bartholomew, Deavenport, Maupin, Stewart and Malone, face a substantial likelihood of personal liability in relation to alleged false and misleading press statements issued after November 6, 2006. However, the only particularized allegation tying these members to the statements is the allegation that they were members of the Audit Committee and/or Risk Committee at the time the releases were issued. The Complaints are devoid of any particularized allegations tying these nine Current Board members to the allegedly improper press releases.

As discussed above, membership on a board committee is insufficient alone to establish a substantial likelihood that the member will face individual liability. *Wood*, 953 A.2d at 142 (*citing*

8

*Rattner v. Bidzos*, 2003 WL 22284323 at *12-13 (Del. Ch. Ct. 2003)). Service on a board committee is an insufficient basis under Delaware law for the court to infer that the members had a culpable state of mind based on allegations that certain board members should have been aware of certain facts. *Wood*, 953 A.2d at 142 (*citing Rattner*, 2003 WL 22284323 at *12-13).

Furthermore, Regions' charter contains a clause which exculpates its directors from liability to the corporation or its stockholders from personal liability for money damages for claims that they breached their fiduciary duties. (08cv485 - Doc. #36 at Ex. 6; 08cv550 - Doc. #32 at Ex.6).[2] "Where directors are contractually or otherwise exculpated from liability for certain conduct, 'then a serious threat of liability may only be found to exist if the plaintiff pleads a non-exculpated claim against the directors based on particularized facts.'" *Wood*, 953 A.2d at 140 (*quoting Guttman v. Huang*, 823 A.2d 492, 501 (Del. Ch. 2003)). Because service on the Audit and Risk Committees is an insufficient basis under Delaware law for the court to infer a culpable state of mind, the members of these committees would not face individual liability on these claims, particularly in light of Regions' exculpatory charter provision. (08cv485 - Doc. #36 at Ex. 6; 08cv550 - Doc. #32 at Ex. 6).

Here, Plaintiffs have failed to present particularized allegations showing that a majority of the Current Board lacked independence as to the issuance of post-November 2006 press releases, and thus they have failed to carry their burden of establishing demand futility. Defendants' Motions to Dismiss are due to be granted as to Post-November 2006 press release claims.

---

[2] The exculpatory charter provision is properly considered in the context of a motion to dismiss. *Wood*, 953 A.2d at 141.

### C. The Sale of EquiFirst and the Alleged Sub-Prime Laden Investment Securities

Plaintiffs' claims in this regard challenge a particular transaction. Therefore, to excuse their failure to make demand on the Board, the *Aronson* test "requires that the plaintiff allege particularized facts creating a reason to doubt that '(1) the directors are disinterested and independent [or that] (2) the challenged transaction was otherwise the product of a valid exercise of business judgment.'" *Wood*, 953 A.2d at 140 (*citing Aronson*, 473 A.2d at 814).

In light of the recent passage of the seven hundred billion dollar bailout package designed to "save" our economy from the now-fully-realized sub-prime mortgage crisis, it is hard to imagine how selling a subsidiary specializing in sub-prime mortgages in exchange for any amount of money, much less seventy-six million dollars, was anything other than a sound business decision. However, in questioning this transaction, Plaintiffs argue that Defendants had a duty to recognize the company's exposure to the "impending" sub-prime mortgage crisis and to take action to limit its exposure to that crisis. Plaintiffs' argument in this regard is somewhat perplexing. On the one hand, they criticize the sale of EquiFirst as a breach of fiduciary duty. On the other hand, they argue that selling EquiFirst didn't go far enough to limit the company's exposure to the crisis. The second prong of Plaintiffs' argument implicitly concedes that there was a legitimate corporate purpose to the sale of EquiFirst, *i.e.*, to limit the company's exposure to the sub-prime mortgage crisis. To satisfy the second *Aronson* prong, Plaintiff must present particularized allegations showing that the transaction was essentially "so devoid of a legitimate corporate purpose as to be a waste of assets." *Strougo v. Carroll*, 1991 WL 9978, *5 (Del. Ch. 1991) (*citing Pogostin v. Rice*, 480 A.2d 619, 626

(Del. 1984);[3] *Michelson v. Duncan*, 407 A.2d 211, 224 (Del. 1979)). Simply stated, they have failed to make the requisite showing.

Wrapped up in their argument that demand was futile as to the EquiFirst sale, Plaintiffs also make reference to a sale by Regions of "over a billion dollars in subprime-laden investment securities for a loss during the second quarter of 2007." (08cv485 - Doc. #39 at 17; 08cv550 - Doc. #35 at 17). Plaintiffs' argument with regard to this transaction is similar to their argument about the sale of EquiFirst in that they criticize the transaction while at the same time arguing that it didn't go far enough. Again, such an argument implicitly concedes that there was a legitimate business purpose behind the transaction. In fact, CMMB's Complaint actually alleges, regarding this transaction, that "[t]he timing of this sale suggests that Regions Financial management was acting to control Regions Financial's exposure to the subprime mortgage crisis." (08cv485 - Doc. #1 at 66). Thus, at least one of the Plaintiffs explicitly admits there was a legitimate business purpose behind this transaction. The court agrees–even based on Plaintiffs' own allegations, there was an obvious business purpose behind the transaction in question. Therefore, Plaintiffs cannot satisfy the second *Aronson* prong with regard to this transaction.

Plaintiffs also argue, under the first *Aronson* prong, that there was reason to doubt that a majority of the board was disinterested and independent with regard to the EquiFirst sale and the sale of the subprime-laden securities. Plaintiffs base this claim on their assertion that the board faces a

---

[3] "[T]he director defendants ignored relevant market conditions ... in deciding to sell the EquiFirst subprime lending subsidiary ... and in selling over a billion dollars in subprime-laden investment securities for a loss ... . The Board had a duty to do all it could to limit Regions' exposure to the impending subprime meltdown. This it did not do. Instead, the Board simply moved to create the illusion that they were limiting the Company's exposure with the sake of EquiFirst. ... the company's sale of over a billion dollars in subprime-laden investment securities ... was also insufficient to limit Regions' exposure." (08cv485 - Doc. #39 at 17; 08cv550 - Doc. #35 at 17).

substantial likelihood of liability for their "breach of fiduciary duties" in regard to this transaction. (08cv485 - Doc. #39 at 19; 08cv550 - Doc. #35 at 19). The argument is flawed because, while citing various cases and analyzing them, Plaintiffs have wholly failed to allege any particularized facts *in this case* that support their claim. Furthermore, as discussed above, Regions' charter contains an exculpatory clause relieving the board from personal liability for claims that they breached their fiduciary duties. (08cv485 - Doc. #36 at Ex. 6; 08cv550 - Doc. #32 at Ex.6). Because a breach of fiduciary duty claim is an exculpated claim, Plaintiffs' argument that the majority of the board is not disinterested or independent (because it faces a substantial likelihood of liability with regard to these transactions) necessarily fails.

Because Plaintiffs have failed to carry their burden of establishing demand futility as to the sale of EquiFirst and the alleged subprime-laden securities, Defendants' Motions to Dismiss are due to be granted as to those claims.

    **D.**    **The 2007 Stock Repurchase Program**

The 2007 stock repurchase is another transaction to which the *Aronson* analysis applies to determine whether demand on the Board would have been futile. Plaintiffs allege that this transaction was not in the company's interest because, at the time of the repurchase, the stock price was artificially inflated.

Plaintiffs argue under the first *Aronson* prong that a majority of the board is not independent because they face a substantial likelihood of liability regarding the 2007 stock repurchase. Plaintiffs base that argument on their assertion that, due to their membership on the Audit and Risk Committees, certain members of the Board knew or should have known that the company's stock was artificially inflated, and the Board members breached their fiduciary duties in approving the

stock repurchase.  As discussed previously, the sole fact of membership on a board committee is an insufficient basis under Delaware law to establish a substantial likelihood that the member will face individual liability.  *Wood*, 953 A.2d at 142 (*citing Rattner*, 2003 WL 22284323 at *12-13).  Furthermore, as already discussed, the Board members would not face individual liability for such a transaction under Regions' Charter's exculpatory clause.

Plaintiffs further argue that the Board is not independent because the stock repurchase was an effort to further its own self interest and that "many Regions insiders sold their personally held shares for gains of over $63 million."  (08cv485 - Doc. #39 at 25; 08cv550 - Doc. #35 at 25).  However, this allegation establishes nothing other than that the Board enjoyed the same potential benefits enjoyed by other stockholders.  "Interest is demonstrated where a director, 'will receive a personal financial benefit from a transaction that is not equally shared by the stockholders,' or, 'where a corporate decision will have a materially detrimental impact on a director, but not on the corporation and the stockholders.'"  *Staehr*, 269 Fed.Appx. at 891 (*quoting Rales*, 634 A.2d at 936).  More importantly, however, Plaintiffs *do not make any allegation* that any Current Board members sold any stock during the 2007 stock repurchase program.  Plaintiffs have failed to allege any facts with particularity which show that any member of the Current Board was interested with regard to this transaction to satisfy the first *Aronson* prong.

As to the second prong of the *Aronson* test, Plaintiffs contend that they have created a reasonable doubt as to whether the Current Board's actions would be entitled to the protections of the business judgment rule.  Such a reasonable doubt is created where the alleged action "is so devoid of legitimate corporate purpose as to be a waste of assets."  (08cv485 - Doc. #39 at 19; 08cv550 - Doc. #35 at 19 (*citing Pogostin*, 480 A.2d at 626)).  Stock repurchase programs have at

13

least a couple of potential benefits to a corporation and its stockholders. First, they offer immediate value to those stockholders interested in cash.[4] *See, e.g., Shamrock Holdings, Inc. v. Polaroid Corp.*, 559 A.2d 278, 290 (Del. Ch. 1989). They also increase the remaining stockholders' equity interest in the corporation (fewer outstanding shares means there is a greater equity interest in each share). *See, e.g., id.* A share with a greater equity component is generally more valuable. Plaintiffs' arguments fail to acknowledge the general purposes behind stock repurchase programs, and merely allege in conclusory fashion that Regions' stock repurchase served no legitimate purpose. In light of the general purposes behind such transactions, such an allegation is insufficient to establish that demand was futile. Plaintiffs have also utterly failed to make particularized factual allegations pointing to any improper motive. Because these transactions have been recognized to have legitimate purposes, Plaintiffs' failure to make such particularized factual allegations defeats their attempts to create reasonable doubt with respect to the protections of the business judgment rule under the second prong of *Aronson*. *See In re Morgan Stanley Derivative Litigation*, 542 F.Supp.2d 317, 327-28 (S.D. N.Y. 2008) (rejecting plaintiffs' arguments under *Rales* and *Aronson* that there was no legitimate purpose behind a stock repurchase transaction where plaintiffs alleged the company's stock prices were artificially inflated because the board did not reveal the certain information to the public).

      Because Plaintiffs failed to carry their burden of establishing demand futility as to the 2007 stock repurchase, Defendants' Motions to Dismiss are due to be granted as to those claims.

---

[4] This is an even more important consideration in light of the sub-prime mortgage crisis.

**E.    Insider Selling**

Plaintiffs must also establish demand futility to proceed with their insider trading claims. *Rattner*, 2003 WL 22284323 at *10. Although Plaintiffs' Opposition to Defendants' Motion to Dismiss contains a section addressing insider selling, Plaintiffs acknowledge that they *do not* assert insider selling as a basis for alleging demand futility. (08cv485 - Doc. #39 at 28, n.18; 08cv550 - Doc. #35 at 28, n.18). Therefore, Plaintiffs appear to have abandoned any opposition to the dismissal of those claims.

**IV.    Conclusion**

For the reasons stated herein, Defendants' motions to dismiss (08cv485 - Docs. #34, 35; 08cv550 - Docs. #30, 31) are due to be granted and Plaintiffs' cases dismissed. The court will enter an order consistent with this memorandum opinion.

**DONE** and **ORDERED** this ___4th___ day of November, 2008.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE